No. 03-2783 C

(Filed September 26, 2005)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | * | |
| ROBERT M. MODEER and EMILY W. MODEER, | * | Motion to Dismiss, RCFC 12(b)(1); Motion for Summary Judgment, RCFC 56; Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (2000); Sum Certain, FAR 52.233-1; New Claim; Certified Claim; Lease Agreement; Holdover Tenancy; Application of Federal Law; Interest |
| *Plaintiffs*, | * | |
| v. | * | |
| THE UNITED STATES, | * | |
| *Defendant*. | * | |
| * * * * * * * * * * * * * * * * | * | |

*Reid F. Holbrook*, Overland Park, KS, for plaintiffs.

*James D. Colt*, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Mark A. Melnick*, Assistant Director, for defendant.

---

**OPINION**

---

**BUSH,** *Judge*

This contract dispute is currently before the court on Plaintiffs' Motion For Summary Judgment, filed March 2, 2005, and Defendant's Motion to Dismiss and Alternative Cross-Motion For Partial Summary Judgment, filed on April 4, 2005. For the reasons set forth herein, plaintiffs' motion is granted in part and denied in part, defendant's motion to dismiss is granted in part and denied in part, and defendant's alternative cross-motion for partial summary judgment is granted.

**BACKGROUND**

The following facts are undisputed unless otherwise noted. Robert and Emily Modeer (plaintiffs or the Modeers) own property in Kansas City, Kansas, located at 25 Funston Road (the property). Beginning in 1987, the General Services Administration (GSA) leased the property from the Modeers on behalf of the United States Environmental Protection Agency (EPA) under Lease No. GS-06P-68579 (the lease).[1] At least part of the property was used for the storage of hazardous materials. A provision of the lease placed responsibility upon defendant for the cleanup and removal of hazardous waste from the property:

> All cleanup and removal [of hazardous waste, as required by federal and state law], for which the Government is responsible, shall be accomplished at no cost to Lessor not later than the termination date of this lease and any extensions hereof.

Compl. Ex. B. The cleanup of the property was not complete until November 4, 2003, almost four months after the July 9, 2003 termination date established by the last lease extension agreement. EPA requested that the utilities not be shut off until the cleanup had been completed.

The parties now appear to agree that a holdover tenancy was created when EPA overstayed the term of the lease in order to complete the cleanup required by the lease. *See* Pls.' Reply at 4; Def.'s Mot. at 3 (referring to the period from July 10, 2003 through sometime in November 2003 as the "holdover period"). The exact beginning and end dates of the holdover tenancy are in dispute and will be discussed in detail, *infra*. On August 7, 2003, Mr. Modeer sent the contracting officer, Dennis Clemons, a letter claiming that "the Government is a holdover tenant with rent accruing at the pro rata rate of $793,509 per year until clean up is complete." Compl. Ex. D. The annual rent for the property of $793,509, or $66,125.75 per month, is the rate quoted in the last extension of GS-06P-68579.

Plaintiffs filed an action in this court on December 5, 2003, asserting

---

[1]/ The lease was amended from time to time by the execution of supplemental lease agreements. The last supplemental lease agreement extended the lease from July 10, 2002 through July 9, 2003. Compl. Ex. A; Def.'s Facts ¶ 2.

jurisdiction pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (2000) (CDA). In their complaint, plaintiffs request back rent for defendant's holdover tenancy at $66,125.75 per month for five months, for a total of $330,628.75. Plaintiffs also seek $4,021.69 for utility costs for the holdover period. In addition, plaintiffs claim interest, under 41 U.S.C. § 611, from the date of the claim.[2]

The parties have filed dispositive cross-motions. Because defendant has moved to dismiss this action for lack of jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), the court will discuss defendant's RCFC 12(b)(1) motion first. This motion, in essence, asserts that Mr. Modeer's August 7, 2003 letter to the contracting officer does not meet the requirements of a "claim" under 41 U.S.C. § 605. The court will then discuss the parties' cross-motions for summary judgment under RCFC 56, concerning the rent, utilities and interest allegedly owed because of defendant's holdover tenancy on the property.

## DISCUSSION

### I. Standard of Review

#### A. Subject Matter Jurisdiction for a CDA Claim

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiffs bear the burden of establishing subject matter jurisdiction, *see Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *see Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC

[2]/ In plaintiffs' motion, an additional type of interest is mentioned. The court addresses the two types of interest, *infra*.

12(h)(3).

Plaintiffs rely on the Contract Disputes Act as the jurisdictional basis for their suit. Under the CDA, a contractor may bring an appeal of a contracting officer's decision directly to this court. *See* 41 U.S.C. § 609 (stating that "in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims"). Even if a contracting officer has not yet issued a final decision on a claim, a contractor may bring a suit here after the required time has elapsed. *See id.* § 605(c)(5) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter."). For this court to take jurisdiction over such a suit, however, the contractor, as a prerequisite, must have presented a written claim to the contracting officer. *See id.* § 605(a); *England v. Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) ("We have held, based on the statutory provisions [of the CDA], that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.") (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

### B. Summary Judgment Regarding Rights under a Lease

The parties have filed cross-motions for summary judgment on the complaint under RCFC 56. The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any evidence presented by the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment pursuant to RCFC 56 properly can intercede and prevent trial if the movant has demonstrated that trial would be useless because more evidence than is already available in connection with its motion could not reasonably be expected to

change the result. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed. Cir. 1984).

Cross-motions for summary judgment are not an admission that no material facts remain at issue. *See Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997) (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)). Separate summary judgment motions may focus on different legal principles and allege as undisputed a different set of facts. *Id.* "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Id.*; *Bayou Land & Marine Contractors, Inc. v. United States*, 23 Cl. Ct. 764, 768 (1991) ("Both plaintiff and defendant, as the moving parties, have the burden of establishing that there are no genuine material issues in dispute and that the movant is entitled to judgment as a matter of law.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"Contract interpretation is a matter of law . . . ." *Neal & Co. v. United States*, 945 F.2d 385, 390 (Fed. Cir. 1991) (citing *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985)). Thus, contract interpretation is suited to resolution by summary judgment. *P.R. Burke Corp. v. United States*, 58 Fed. Cl. 549, 554 (2003) (citations omitted). When the United States enters into a lease agreement, that lease is a contract subject to the CDA. *See, e.g.*, *Forman v. United States*, 767 F.2d 875, 879 (Fed. Cir. 1985) (stating that "newly-created lease agreements . . . fall within the purview of . . . the corresponding provisions of the Contract Disputes Act"). Here, if the material facts are undisputed, the court may interpret the lease and award summary judgment according to applicable law. *See Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1300 n.11 (Fed. Cir. 1986) (stating that "[t]he determination [of the duties] implied in a lease agreement is a question of law, and is reviewed as such").

## II. Analysis

### A. Subject Matter Jurisdiction

Defendant argues that plaintiffs failed to comply with the jurisdictional requirements of the CDA because the Modeers did not first make a written claim to the contracting officer as required by 41 U.S.C. § 605(a). Defendant contends that "[t]he only written claim that the Modeers assert that they made to satisfy the

jurisdictional prerequisites of this [c]ourt was an August 7, 2003[] letter to the contracting officer, Dennis Clemons." Def.'s Mot. at 5. Defendant asserts that the letter failed to demand a sum certain as required by 41 U.S.C. § 605(a), and failed to mention the utility costs now sought by plaintiffs. Defendant also appears to question whether the Modeers' claim as presented in the August 7, 2003 letter was certified as required by 41 U.S.C. § 605(c)(1).

Thus, the court must address whether the August 7, 2003 letter presented a claim to the contracting officer, whether that claim was certified and whether utility costs were included as part of the claim. Each of these issues will be addressed in turn.

### 1. Whether the August 7, 2003 Letter Is a Claim

Although the CDA does not define the term "claim," the Federal Acquisition Regulations System (FAR) defines a claim as

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to this contract.

FAR § 52.233-1(c) (codified at 48 C.F.R. § 52.233-1(c) (2004)). No particular formula or terminology is required. As the Federal Circuit has stated:

> We know of no requirement in the [Contract] Disputes Act that a "claim" must be submitted in any particular form or use any particular wording. All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.

*Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) (citing *Tecom, Inc. v. United States*, 732 F.2d 935, 936-37 (Fed. Cir. 1984); *Metric Constr. Co. v. United States*, 1 Cl. Ct. 383, 392 (1983)). Here, Mr. Modeer's August 7, 2003 letter serves as clear and unequivocal notice that the United States, as a holdover tenant performing the final condition of the lease, was

liable for rent "at the pro rata rate of $793,509 per year until clean up [wa]s complete." Compl. Ex. D.

A claim that states that a certain monthly amount is owed to the contractor, in this case a landlord, presents a sum certain to the contracting officer as required by FAR § 52.233-1(c). *See Tecom*, 732 F.2d at 937 (stating that a letter which "specifically asked 'compensation of $11,000.04 per year, to be billed at $916.67 per month[]' . . . was quite enough specificity for the claim, under both statute and regulation"). The sum certain requirement is met if the contracting officer can determine the amount claimed by a simple mathematical calculation. *CPS Mech. Contractors, Inc. v. United States*, 59 Fed. Cl. 760, 764 (2004) (citing *Metric Constr. Co. v. United States*, 14 Cl. Ct. 177, 179 (1988)). The claim set forth in the August 7, 2003 letter, mailed less than one month after the lease termination date, must be read to request a final decision from the contracting officer on a claim for one month's holdover rent on the property, which was stated to be "rent accruing at the pro rata rate of $793,509 per year," or $66,125.75.[3]

Here, plaintiffs' claim was submitted to the contracting officer before the cleanup was complete and before the total number of months of holdover rent could be ascertained by either the government or the Modeers. This fact, however, is not an impediment to the Modeers' claim for rent for the entire holdover period. It is certainly true that a contractor may not present a new claim to this court that was not first presented to the contracting officer for a final decision. *See, e.g., Kunz Constr. Co. v. United States*, 12 Cl. Ct. 74, 79 (1987) (stating that "it is the general rule that the Claims Court does not have jurisdiction under the Contract Disputes Act over claims which a contractor failed to present to the agency's contracting officer") (citing *Paragon Energy Corp. v. United States*, 645 F.2d 966, 967 (Ct. Cl. 1981); *Newport News Shipbuilding & Dry Dock v. United States*, 7 Cl. Ct. 549, 555 (1985)). But if the dollar value of a claim increases based on new information available only after the claim was submitted to the contracting officer, it is the same claim, not a new claim, as long as it arises from the same operative facts as the original claim and claims the same categories of relief. *See, e.g., Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 418 (1987) (testing for new claims by determining whether a claim "is based on a different set of operative

---

[3]/ The court notes that this claim amount is less than the $100,000 threshold above which certification by the contractor is required by 41 U.S.C. § 605(c)(1).

facts or seeks different categories of relief"); *Miya Bros. Constr. Co. v. United States*, 12 Cl. Ct. 142, 146 (1987) (holding that "[t]he increased amount of plaintiff's claim that was not submitted to the contracting officer for decision does not represent a new 'claim' . . . [because] the factual basis for the [increased] claims are identical to the claims that were . . . certified to the contracting officer") (citing *Curley, Inc. v. United States*, 6 Cl. Ct. 274, 276-78 (1984); *Spradlin Corp.*, ASBCA No. 23,974, 81-2 BCA ¶ 15,423 (Sept. 30, 1981)); *Kunz*, 12 Cl. Ct. at 79 (stating that increased claim amounts in this court are permitted if the operative facts are the same as those presented to the contracting officer and "the court finds that the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim" (citations omitted)); *J.F. Shea Co. v. United States*, 4 Cl. Ct. 46, 55 (1983) (finding jurisdiction over a claim when "the factual basis of the claim before this court is identical to the claim which was certified to the contracting officer"). Because the holdover rent claim for the entire holdover period arises from the same operative facts and claims the same category of relief as the holdover rent claim for the first month of the holdover period, and because the length of the holdover tenancy could not have been known by the Modeers at the time they presented the claim to the contracting officer, this court has jurisdiction over the entire holdover rent claim.

### 2. Whether Plaintiffs' Claim Was Certified

In this case, the jurisdictional requirement for certification of claims for more than $100,000 does not apply. The August 7, 2003 letter states a claim for the sum certain of $66,125.75, one month's holdover rent for the period of July 10, 2003 through August 9, 2003.[4] Compl. Ex. D. The letter references the termination date of the lease, July 9, 2003, the cleanup condition creating a holdover tenancy, the *pro rata* rate of rent for the holdover tenancy, and is dated less than one month after the termination date of the lease. *Id.* This letter states a claim well below the threshold amount requiring certification by the contractor.[5]

---

[4]/ The term of the holdover leaseholds on the property, from the tenth of one month to the ninth of the next month, is discussed in detail, *infra*.

[5]/ When an uncertified claim under the threshold amount stated in 41 U.S.C. § 605(c)(1) is presented to the contracting officer but later increases, based on new information, to an (continued...)

*See* 41 U.S.C. § 605(c)(1). Should this court have erred in reading the August 7, 2003 letter as stating a claim for just one month's rent and therefore less than $100,000, the court finds it prudent to address whether the holdover rent claim in the August 7, 2003 letter was certified.

Certification of claims, 41 U.S.C. § 605(c)(1), is not a mere formality:

> The purpose of certification is to facilitate settlements based upon a truthful submission of the contractor's costs. *Ingalls Shipbuilding, Inc. v. O'Keefe*, 986 F.2d 486, 491-93 (Fed. Cir. 1993) (detailing legislative history behind certification requirement). Certification discourages the submission of fraudulent or inflated claims by making contractors liable for fraudulent representations. *J & E Salvage Co. v. United States*, 37 Fed. Cl. 256, 263 (1997), *aff'd*, 152 F.3d 945 (Fed. Cir.), *cert. denied*, 525 U.S. 827, 119 S. Ct. 76, 142 L. Ed. 2d 59 (1998); *Fischbach and Moore Int'l Corp. v. Christopher*, 987 F.2d 759, 763 (Fed. Cir. 1993) . . . .

*Medina Constr., Ltd. v. United States*, 43 Fed. Cl. 537, 547 (1999). The CDA provides the terms by which a contractor may certify a claim:

---

[5](...continued)
amount which exceeds the threshold triggering the requirement for certification, the court will not insist on certification of the original claim, unless the contractor's original claim was designed to avoid the certification requirement. *See Tecom*, 732 F.2d at 938 (stating "the general principle that a monetary claim *properly* considered by the contracting officer (here, because it was less than $50,000 and covered only one year) need not be certified or recertified if that very same claim (but in an increased amount reasonably based on further information) comes before a board of contract appeals or a court." (footnote omitted)); *Curley*, 6 Cl. Ct. at 277-78 ("As the plaintiff is presenting to the court precisely the same claim that it presented to the contracting officer (except for the increased amount of the damages claimed), and as there was no statutory requirement that the claim be certified when it was submitted to the contracting officer, it appears that the sensible procedure would be for the court to retain jurisdiction of the case and proceed to determine whether the plaintiff's failure to submit the full amount of the claim, with a proper certification, to the contracting officer in the first instance was or was not intentional (*e.g.*, in order to avoid the certification requirement) or due to neglect or carelessness on the part of the plaintiff; and if it appears that the answer to that inquiry is in the negative, to determine the merits of the plaintiff's claim.").

> For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1). Here, Mr. Modeer's letter concludes with a certification statement that reproduces some of the required certification terms:

> Pursuant to 41 U.S.C. §[§] 601-613, I certify that the amount is claimed in good faith and that all supporting documents are in possession of the Government. Further, I certify that the above sum is what the Government is liable for.

Compl. Ex. D. Mr. Modeer's signature is directly below this statement, and it is clear that Mr. Modeer is empowered to bind plaintiffs by his certification.

The court finds that Mr. Modeer attempted to certify plaintiffs' claim to the contracting officer in accordance with 41 U.S.C. § 605(c)(1). Although his certification is technically defective because it is missing some of the elements required by the CDA, it complies with the spirit and intent of the certification requirement, which is to deter fraud. A technically defective certification may be corrected before the entry of final judgment in this court, and does not deprive this court of jurisdiction. *See* 41 U.S.C. § 605(c)(6) ("A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected."); *Medina*, 43 Fed. Cl. at 548 ("The Court may direct the correction of any technical [certification] deficiencies prior to the entry of final judgment."). Even assuming that the Modeers' claim required certification, this court would not be deprived of jurisdiction because of the technical deficiencies of the certification of plaintiffs' claim to the contracting officer. Thus, the court would also have jurisdiction over this claim even if the August 7, 2003 letter could be read to state a claim of over $100,000.

Because the court has found that the August 7, 2003 letter stated a claim for $66,125.75, no certification was required, and plaintiffs have complied with the jurisdictional requirements of 41 U.S.C. § 605(c)(1).

### 3. Whether Plaintiffs Presented a Claim for Utility Costs

The August 7, 2003 letter sets forth a sum certain for holdover rent owed and describes plaintiffs' claim as based on the government's status as "a holdover tenant," but nowhere mentions the government's liability for utility costs. Compl. Ex. D. The letter also fails to request a sum certain for utility costs. Indeed, the only dollar figure presented to the contracting officer relates to rent, as fixed by the supplemental lease agreement, and Mr. Modeer states that "all supporting documents are in possession of the Government." It is undisputed that plaintiffs did not provide defendant with supporting documentation for utility costs until April 2004. Because there is no direct or indirect mention of a claim for utility costs in the August 7, 2003 letter, and no means by which the contracting officer could render a final decision on the amount of such costs owed plaintiffs, the court concludes that this is a new claim that has not been presented to the contracting officer. In essence, plaintiffs' claim for holdover rent has been increased to include the costs of utilities provided during the holdover tenancy.

As discussed *supra*, an increase in the quantum of a claim after it has been presented to the contracting officer may in some circumstances be permitted, but the contractor "may not raise any *new* claims not presented and certified to the contracting officer." *Santa Fe Eng'rs, Inc. v. United States*, 818 F.2d 856, 858 (Fed. Cir. 1987) (citing *J.F. Shea*, 4 Cl. Ct. at 54); *see SMS Data Prods. Group, Inc. v. United States*, 19 Cl. Ct. 612, 615 (1990) ("The excess quantum must, however, spring from the same certified claim."). While it may not always be easy to discern whether a claim is a new claim or an increase in the amount of an old claim, there is ample precedent which states that a new category of damages may not be adjudicated by this court if that category of damages was not presented to the contracting officer in the original claim. *See, e.g.*, *Santa Fe Eng'rs*, 818 F.2d at 859 (finding that the claim presented to the contracting officer was for damages related to three change orders, but that the new claim, for which the Board of Contract Appeals lacked jurisdiction, was related to "'the collective nature of *all* the problems, changes and directives on the project'"); *Kunz*, 12 Cl. Ct. at 79

(stating that because "the plaintiff should reasonably have included an item for increased home-office overhead in the claim which it submitted to the contracting officer, but failed to do so, the court concludes that it cannot properly take jurisdiction over the increased home-office overhead item which the plaintiff has included in the claim presented to the court"); *LDG Timber Enters., Inc. v. United States*, 8 Cl. Ct. 445, 452-53 (1985) (finding that the Claims Court had no jurisdiction over a new claim for damages related to mismarked Forest Service timber, when the claim presented to the contracting officer was only for damages related to faulty estimates of the amount and type of timber available for harvest).

One test for deciding whether a claim may be increased in amount after the original claim has been presented to the contracting officer was clearly stated in *Kunz*:

> The case law permits the Claims Court to exercise jurisdiction over a claim the dollar amount of which has been enlarged in this court over the amount presented to the contracting officer: (1) if the increase in the amount of the claim is based on the same set of operative facts previously presented to the contracting officer (*LDG Timber Enterprises, Inc. v. United States*, 8 Cl. Ct. 445, 452-54 (1985); [*J.F.*] *Shea Co. v. United States*, 4 Cl. Ct. 46, 54-55 (1983)); and (2) the court finds that the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim (*LDG Timber*, 8 Cl. Ct. at 454).

12 Cl. Ct. at 79; *see also AAI Corp. v. United States*, 22 Cl. Ct. 541, 544 (1991) (quoting the rule announced in *Kunz*). This test was restated in abbreviated form in *Cerberonics*: "If the complaint brought here is based on the same set of operative facts underlying the claim presented to the contracting officer, then this court has jurisdiction under the CDA." 13 Cl. Ct. at 417 (citing *Kunz*, 12 Cl. Ct. at 79; *J.F. Shea*, 4 Cl. Ct. at 54-55). The *Cerberonics* court went on to consider the rationale of this jurisdictional inquiry:

> The critical [jurisdictional] test appears to be whether the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal–that is, by circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim.

*Id.* at 418. Instead of testing for "the same set of operative facts" and whether the contractor knew or should have known of additional costs which would later increase the total cost of the claim, *Kunz*, 12 Cl. Ct. at 79, the *Cerberonics* court looked at whether the plaintiff's complaint "is based on a different set of operative facts or seeks different categories of relief." 13 Cl. Ct. at 418.

The *Cerberonics* version of the test has proved useful in a number of cases. *See, e.g.*, *Kiewit Constr. Co. v. United States*, 56 Fed. Cl. 414, 420 (2003) (citing *Cerberonics* and not taking jurisdiction where "the Type I differing site conditions claim submitted to the Contracting Officer and the defective specifications claim made in Count I [of the complaint before the court] rely upon different operative facts"); *ThermoCor, Inc. v. United States*, 35 Fed. Cl. 480, 489 (1996) (citing *Cerberonics* and finding jurisdiction for a claim where "[t]he factual bases for the equitable adjustment claim for increased quantities were submitted to the contracting officer [and] [p]laintiff has not raised a claim for any additional expenses or items"); *id.* at 493 (citing *Cerberonics* and not taking jurisdiction over a claim for bad faith and defective specifications where that claim "involves entirely different facts from proving a requirement to perform extra work"); *Cerberonics*, 13 Cl. Ct. at 419 (finding jurisdiction where "plaintiff's complaint [merely] augments the legal theories underlying its claim[,] [b]ut it does not change the essence of that claim"). *Cerberonics* has also been cited by the Federal Circuit in *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003), in the same paragraph as this description of the jurisdictional test for excluding new claims from immediate judicial review:

> The Court of Federal Claims correctly found that it had jurisdiction over Scott's claims in this case, because they arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for

that recovery.

*Id.* (citing the underlying decisions on appeal).

It is not perfectly clear whether the *Kunz* test and the *Cerberonics* test are mutually exclusive, or whether the *Kunz* test is more applicable to claims before this court which have increased costs or added cost items after the original claim was submitted to the contracting officer, and the *Cerberonics* test is better suited to claims which have added or substituted legal theories of liability for those presented to the contracting officer in the original claim. In the case at bar, the court need not choose between the two tests because plaintiffs' claim for utility costs fails both tests. The set of operative facts needed for the utility costs claim includes the request by EPA that the Modeers not shut off the utilities and includes supporting documentation of costs incurred by the Modeers for utilities at the property. None of these facts were presented to the contracting officer in the August 7, 2003 letter, nor were these facts necessary for the holdover rent claim. Thus, because the utility costs claim arises from different operative facts than those before the contracting officer, this court is without jurisdiction to adjudicate plaintiffs' claim.

In addition, because plaintiffs knew that they were paying the utilities on the property at the request of EPA by the time they submitted their claim on August 7, 2003, *see* Def.'s Facts Attach. A at 6 (utility account deposit receipt for the Modeers' payment made on July 22, 2003), this undisputed fact deprives the court of jurisdiction for the utility costs claim under the *Kunz* test. The utility costs were a known increased expense under the contract, which in this case is a lease, and could not be omitted from the original claim and later be considered by this court. *See Kunz*, 12 Cl. Ct. at 79. Under the *Cerberonics* test, plaintiffs' utility costs claim is a different category of relief upon which the contracting officer has not ruled. *See Cerberonics*, 13 Cl. Ct. at 418. For this reason, plaintiffs' utility costs claim fails the second part of the *Cerberonics* test as well. This court has no jurisdiction over plaintiffs' utility costs claim.

Defendant's motion to dismiss for lack of jurisdiction is thus granted for

plaintiffs' utility costs claim of $4,021.69.[6]

**B. The Merits of Plaintiffs' Holdover Rent Claim**

There are no genuine issues of material fact regarding the time period of EPA's holdover tenancy on the property. The lease expired on July 9, 2003. Compl. Ex. A. EPA's cleanup activity was not completed until November 4, 2003. *Id.* ¶ 8; Pls.' Facts ¶ 5; Def's Resp. To Pls.' Facts ¶ 5. Thus, the holdover tenancy runs from July 10, 2003 through at least November 4, 2003. As an initial matter, however, the court must address whether defendant owes any rent for the leasehold which expired on July 9, 2003.

The terms of the last lease extension are clear. For a term of one year, from July 10, 2002 through July 9, 2003, the United States "agree[d] to pay the annual rent of $793,509.00 . . . at the rate of $66,125.75 per month in arrears." Compl. Ex. A. All other terms of the lease were to "remain in force and effect." *Id.* The most relevant term of the lease which remained in effect was the payment due date provision:

> (a) Payment due date.
>
> (1) Rental payments. Rent shall be paid monthly in arrears and will be due on the first workday of each month, and only as provided for by the lease.
>
> (i) When the date for commencement of rent falls on the 15th day of the month or earlier, the

---

[6]/ Although this court has no jurisdiction over plaintiffs' claim for utility costs, it may not be too late for plaintiffs to submit this claim to the contracting officer. *See Powerine Oil Co., USA v. United States*, 837 F.2d 1581, 1584 (Fed. Cir. 1988) (stating that unless a contract sets a time limit for the submission of claims, "claims must be brought within a reasonable time"). It appears that the standard government contract "Disputes" clause, codified at 48 C.F.R. § 52.233-1, was included in this lease, because it is referenced in other lease clauses. *See* Pls.' Mot. Attach. 1 at 2. The current version of the "Disputes" clause permits a contractor to submit a claim to the contracting officer within six years of the claim's accrual. 48 C.F.R. § 52.233-1(d)(1) (2005). It is unclear from the record before the court which version of the "Disputes" clause was incorporated into the lease at the time it expired in July 2003.

> initial monthly payment under this contract shall become due on the first workday of the month following the month in which the commencement of the rent is effective.

Pls.' Mot. Attach. 1 at 1. The government regularly paid $66,125.75 according to the lease on the first workday of each month, making its final payment, under the last lease extension, on July 1, 2003. Pls.' Facts ¶¶ 10-11. Thus, because the lease term here started on the tenth day of the month, each leasehold month's rent was due to be paid in arrears, but only in arrears for the twenty days or so that would pass in each leasehold month before rent would become due on the first workday of the following calendar month. Under the terms of the lease, the payment on July 1, 2003 was for the final month of the lease, June 10, 2003 through July 9, 2003.

The parties have faltered in their understanding of this issue. Plaintiffs have argued that the final payment on July 1, 2003 was for the period of June 1, 2003 through June 30, 2003, or for May 10, 2003 through June 9, 2003, but not for June 10, 2003 through July 9, 2003. *Compare* Compl. ¶ 7 ("Rent pursuant to the lease was paid through June 30, 2003.") *with* Pls.' Mot. at 4 (stating that "[i]f the Defendant's position is correct [that the leasehold period expired on the ninth day of each month,] the July 1, 2003 rental payment would have been for the period May 10, 2003 to June 9, 2003[, and the period from June 10, 2003 to July 9, 2003 was never paid]"). Apparently defendant was at one point convinced that plaintiffs were correct in one of their lease interpretations. *See* Joint Preliminary Status Report of July 26, 2004 ¶ 8 ("Both the Modeers and the Government agree that the rent pursuant to the lease was paid through June 30, 2003 and that the remaining 9 days of the lease went unpaid.").

Defendant's stipulation as to unpaid rent, however, was a stipulation of law, because lease interpretation is a matter of law. This court is not bound by defendant's stipulations of law. *E.g.*, *Hegeman-Harris & Co. v. United States*, 440 F.2d 1009, 1012 (Ct. Cl. 1971); *Sac and Fox Tribe of Indians of Okla. v. United States*, 315 F.2d 896, 901 (Ct. Cl. 1963) (citing *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289 (1917)); *Hoffman Constr. Co. v. United States*, 7 Cl. Ct. 518, 529 (1985). Because the payments made by the United States pursuant to the

lease are undisputed and the lease is unambiguous as to the import of those payments, the court will make the only possible reasonable inference and conclude that the July 1, 2003 payment of $66,125.75 paid the rent on the property through July 9, 2003. Thus, no rent is due for any period prior to July 9, 2003.

The sole remaining dispute regarding plaintiffs' claim for holdover rent is whether defendant is liable for four or five months back rent for the holdover tenancy on the property.[7] *See* Pls.' Reply at 5 ("The sole issue in dispute is whether the unpaid rent is four months as contended by Defendant or five months as contended by Plaintiffs."). This too is a matter of law.

The parties have not cited to any contract provision which would bind this court to Kansas law in interpreting the lease. Federal law will normally govern the interpretation of a lease when the United States is the lessee. *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986) ("It is well settled that contracts to which the government is a party–and though a lease may concern and convey a property interest it is also very much a contract–are normally governed by federal law, not by the law of the state where they are made or performed.") (citations omitted). "To the extent existing federal law is not determinative of the issue and permits an area of choice between the merits of competing principles, the best in modern decision and discussion, including the general principles of contract and landlord-tenant law, should be taken into account." *Id.* (citations omitted). This court will look to state law as part of its examination of the "best in modern decision and discussion," if necessary to resolve a dispute. *See Ginsberg v. Austin*, 968 F.2d 1198, 1200 (Fed. Cir. 1992) (stating that when "federal law does not answer the issue, we look to general property and contract law principles as they are embodied in state law pronouncements"); *Allenfield Assocs. v. United States*, 40 Fed. Cl. 471, 481 (1998) (applying "Pennsylvania landlord-tenant law regarding the expiration of subleases . . . because it fully conforms to the general principles of landlord-tenant law that represent 'the best in modern decision and discussion'").

---

[7]/ Although defendant does not specifically admit liability for holdover rent, its only argument on the merits of plaintiffs' rent claim is that "there is no basis for this Court to find that any holdover tenancy would have ended on any day other than November 9, 2003." Def.'s Reply at 3.

On the subject of holdover tenancies, controlling precedent states that: "It is a well settled general principle of law that when a tenant holds over after the expiration of his lease with the express or implied consent of the landlord and without any new or different agreement as to rent, the terms of the old lease will apply." *Garrity v. United States*, 67 F. Supp. 821, 822 (Ct. Cl. 1946). This principle, in this case, means that the month-long holdover leasehold periods on the property were from July 10 to August 9, August 10 to September 9, September 10 to October 9, and October 10 to November 9, 2003. These dates total a holdover tenancy of four months, for which four months rent is due. The United States had quit the property before the next holdover leasehold period would have begun.

General principles of landlord-tenant law command the same result. The terms of the expired lease, when not replaced by statute, a new agreement or an express holdover provision, usually govern a holdover tenancy. *See* 49 Am. Jur. 2d *Landlord & Tenant* § 376 (1995) (stating that "the general rule is that the tenancy arising from the tenant's holding over with the consent of the landlord is presumed to be upon the same covenants and terms as the original lease, so far as they are applicable to the new tenancy"). Each leasehold period, and the rent due for that period, is calculated in the same fashion as under the expired lease. *Id.* § 377 ("Absent an agreement to the contrary, it is presumed that a holdover tenant is liable for the rent for another period, if for one year or less, under the same terms as the original lease."). Here, according to the expired lease, for each monthly period from the tenth day of one month to the ninth day of the next month, the United States was to pay $66,125.75 in arrears, on the first workday of that "next" month. During the holdover tenancy, the United States had an identical obligation, and now owes four months rent, for the holdover tenancy from July 10, 2003 through November 9, 2003.

Kansas state law, although not controlling in this case, is in accord with these principles. Plaintiffs cite, in vain, to Kan. Stat. Ann. § 58-2503 in support of their claim for five months rent: "When rent is reserved payable at intervals of three months or less, the tenant shall be deemed to hold from one period to another equal to the interval between the days of payment, unless there is an express contract to the contrary." *Id.* This statute merely mandates that a holdover tenancy, following a lease where rent was paid monthly, will be for a succession of one-month leaseholds, even if the last holdover occupancy period is for less than

one month. Defendant has not argued differently. The statute does not, however, support an inference that holdover leaseholds are converted to calendar months simply because payment was made, according to the expired lease, at or near the beginning of the calendar month.

The cases applying Kansas law cited by defendant support defendant's position that the leaseholds of the holdover tenancy on the property continued to conclude on the ninth day of each month, as they had during the original lease and the lease extensions. *See Becker v. McFadden*, 561 P.2d 416, 419 (Kan. 1977) ("The general rule is that when a tenant holds over his term with the consent of the landlord, express or implied, the law implies a continuation of the original tenancy upon the same terms and conditions.") (citations omitted); *see also Swanson v. Pub. Storage, Inc.*, 2001 WL 584457, at *5 n.13 (D. Kan. 2001) (same, citing *Becker*). The court has found no contrary cases. Thus, under Kansas law, as under federal law and general landlord-tenant principles, defendant here is liable for four months rent, from July 10, 2003 through November 9, 2003.

Because federal law, general landlord-tenant principles, and Kansas law all indicate that defendant owes plaintiff for four months rent on the property, not five months rent, defendant's alternative cross-motion for partial summary judgment is granted on this issue.

### C. The Merits of Plaintiffs' Interest Claim

Plaintiffs appear to claim two types of interest on the holdover rent owed to them.[8] The first is an interest penalty for late payment of rent allegedly provided by the "Prompt Payment" clause of the lease:

> "The interest penalty shall be at the rate established by the Secretary of [the] Treasury under section 12 of the Contract Disputes Act of 1978 [41 U.S.C. § 611] that is

---

[8]/ Although the complaint and topic headings of plaintiffs' motion only refer to CDA interest, a second type of interest is described in the text of plaintiffs' motion and is addressed here.

> in effect on the day after the due date. [. . .] Further, the interest penalty shall accrue daily on the payment amount approved by the Government and be compounded in 30-day increments inclusive from the first day after the [due] date through the payment date."

Pls.' Mot. at 5-6; *see also* Pls.' Mot. Attach. 1 at 2 (lease "Prompt Payment" clause, which references 48 C.F.R. § 552.232-71(c)(2)). The court notes, however, that the "Prompt Payment" lease provision and the regulation upon which it is based state further that:

> Interest penalties are not required on payment delays due to disagreement between the Government and Contractor over the payment amount or other issues involving contract compliance or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the clause at 52.233-1, Disputes.

Pls.' Mot. Attach. 1 at 2 (lease provision referencing 48 C.F.R. § 552.232-71(c)(4)). Thus, the Prompt Payment lease provision clearly indicates that this interest penalty is not to be paid in addition to interest available through the Disputes clause, when the delay in payment is due to a disagreement, as is the case here, as to the liability of the United States for the back rent claimed.

The statutes providing for these two types of interest are mutually exclusive in this instance. The Prompt Payment Act, 31 U.S.C. §§ 3901-3907 (2000), provides an interest penalty to businesses for "delivered item[s] of property or service [not paid for by the federal government] by the required payment date." *Id.* § 3902(a). However, when a payment amount is disputed, contractors are limited to the interest offered by the Contract Disputes Act, 41 U.S.C. § 611:

> Relationship to other laws

> . . . .
>
> (c) Except as provided in section 3904 of this title, this chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract. A claim related to the dispute, and interest payable for the period during which the dispute is being resolved, is subject to the Contract Disputes Act of 1978 (41 U.S.C. [§] 601 et seq.).

31 U.S.C. § 3907.

Thus, the interest penalty provided by the Prompt Payment Act is not available to a contractor, in this case a lessor, when the claimed payment amount is in dispute. *E.g.*, *Gutz v. United States*, 45 Fed. Cl. 291, 298 (1999). Here, because the contracting officer never responded to Mr. Modeers' August 7, 2003 letter, he is deemed to have denied the Modeers' claim. *See* 41 U.S.C. § 605(c)(5). Because the holdover rent claim was in dispute, no Prompt Payment Act interest is due on plaintiffs' claim. *See, e.g.*, *George Sollitt Constr. Co. v. United States*, 64 Fed. Cl. 229, 304 (2005).

Because the court has determined that it will award the Modeers four months holdover rent, interest on the amount of the award is provided by the CDA:

> Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury . . . .

41 U.S.C. § 611. The CDA also fixes the date this interest starts to run, which is

the date the claim was received by the contracting officer.[9] *Servidone Constr. Corp. v. United States*, 931 F.2d 860, 862 (Fed. Cir. 1991). This date is fixed by statute, and applies to the total costs embodied in the claim to the contracting officer, even if some of the costs have not yet been incurred by the contractor. *Id.* ("This [statutory] language sets a single, red-letter date for interest on all amounts found due by a court without regard to when the contractor incurred the costs.") (citation omitted).

Although this statutory imperative may lead to incongruous results, as in this case, where interest begins to run on rent that is ultimately found owing even before some of that rent is actually due, the statutory scheme is intended to promote prompt submission and resolution of claims. *See id.* at 863 (stating that Congress "adopt[ed] an objective, bright-line standard [which] effectively advances some of the main policies of the CDA–to expedite dispute resolution and to ensure fair and equitable treatment of contractors"). It is not the role of this court to tinker with the rule waiving the sovereign immunity of the United States for interest under the CDA. *See Caldera v. J.S. Alberici Constr. Co. v. United States*, 153 F.3d 1381, 1383 (Fed. Cir. 1998) (commenting on the date for computation of interest fixed by section 611 and stating that "[i]f the statute wrongly requires the United States to pay interest on a contractor's prospective costs, Congress may correct it"). Interest on the entire holdover tenancy rent claim starts running as of the date the claim was received by the contracting officer, approximately August 7, 2003.[10] *See Kelley v. United States*, 19 Cl. Ct. 155, 166 (1989) (awarding interest under section 611 on several months back rent owed by the United States, running from the date the contracting officer received the claim, even though the tenancy at the time of the claim submission had only run approximately one month).

---

[9]/ Even when a claim that must be certified is technically deficient in its certification, interest begins to run as of the date the claim was received by the contracting officer. *See* 41 U.S.C. § 611 note (Interest Due on Claims with Defective Certifications); 48 C.F.R. § 52.233-1(h) (2004).

[10]/ Defendant has admitted that the claim was *sent* on August 7, 2003, Def.'s Facts ¶ 5, but the date of receipt is not in the record before the court. The parties are instructed to file a notice with the court as to the date the contracting officer received Mr. Modeer's letter, *see infra*.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed on April 4, 2005, is **GRANTED IN PART**, as to plaintiffs' claim for utility costs, and is otherwise **DENIED**;

(2) Defendant's Alternative Cross-Motion For Partial Summary Judgment, filed on April 4, 2005, is **GRANTED** on the issue that defendant is liable for no more than four months holdover rent;

(3) Plaintiffs' Motion For Summary Judgment, filed March 2, 2005, is **GRANTED IN PART**, as to defendant's liability for holdover rent on the property and interest on that rent under 41 U.S.C. § 611, and **DENIED IN PART**, as to this court's jurisdiction over plaintiffs' utility costs claim, defendant's liability for five, not four, months rent, and interest under the Prompt Payment Act;

(4) The parties are directed to **FILE** a **NOTICE** with the court, on or before **October 7, 2005**, indicating the date of receipt by the contracting officer of Mr. Modeer's August 7, 2003 letter;

(5) Upon receipt of the parties' notice, and without further order from the court, the Clerk's office is directed to **ENTER** judgment for plaintiffs in the amount of **$264,503**, **with interest** running from the date indicated in the parties' notice to the date this judgment is paid, at the rate mandated by 41 U.S.C. § 611; and

(5) Each party shall bear its own costs.

s/Lynn J. Bush
LYNN J. BUSH

Judge